UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMBER DUBNOV, | : | CIVIL ACTION NO.: |
| Plaintiff, | : | 3:20-cv-00790 (    ) |
| v. | : | |
| UNIVERSITY OF HARTFORD, | : | |
| Defendant. | : | June 8, 2020 |

## COMPLAINT

**I.   INTRODUCTION**

1. Amber Dubnov was hired by the University of Hartford (hereinafter "the University") as its Assistant Business Manager for Athletics in 2014.

2. From approximately April 2017 to September 27, 2019, the University paid Ms. Dubnov at a rate less than comparable male employees. Ms. Dubnov and the male employees performed equal work on the job, which required equal skill, effort and responsibility, and their work was performed under similar working conditions.

3. In 2018 and 2019, Ms. Dubnov complained about the substantial difference in pay between her and her male co-workers, yet no corrective action was taken until September 27, 2019.

4. Accordingly, Ms. Dubnov brings claims for Unequal Pay in violation of the Connecticut Equal Pay Act, Conn. Gen. Stat. §§ 31-75(a) & 31-76(b), and the Federal Equal Pay Act, 29 U.S.C. § 206(d).

**II.   JURISDICTION AND VENUE**

5. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

1

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because the events or omissions giving rise to the asserted claims occurred herein.

7. This Court has supplemental jurisdiction over the plaintiff's state law claims, pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy as the federal law claims.

### III. PARTIES

8. The plaintiff, Amber Dubnov, resides in Farmington, Connecticut.

9. The defendant, University of Hartford, is a private university with a campus located at 200 Bloomfield Avenue, West Hartford, Connecticut.

10. Ms. Dubnov is female.

11. The University of Hartford employs 50 or more employees in Connecticut.

12. At all relevant times mentioned herein, the University of Hartford was Ms. Dubnov's employer within the meaning of the Connecticut Equal Pay Act, Conn. Gen. Stat. §§ 31-75(a) & 31-76(b), and the Federal Equal Pay Act, 29 U.S.C. § 206(d).

### IV. STATEMENT OF FACTS

**A. Amber Dubnov Is the "Constant" in the University of Hartford Athletics Department as It Cycles Through Five Athletic Directors in Less Than Six Years.**

13. From the date of her hire in 2014, Ms. Dubnov performed well. A college athlete herself, Ms. Dubnov was acutely aware of the intersection between the intricacies of a successful college athletics program and its operation as a business. By February 2017, the University promoted her from Assistant Business Manager to Interim Associate Athletic Director for Business Operations. Around campus, Ms. Dubnov was the "go-to" person for all things athletics. If

students, coaches, or administration officials needed something under the athletics umbrella, Ms. Dubnov was it.

14. As the Assistant Business Manager, Ms. Dubnov was paid $44,428.80. The University increased her salary by $10,000 when it promoted her to Interim Associate Athletic Director for Business Operations.

15. Later in 2017, the University hired Mary Ellen Gillespie as its fourth Athletic Director in just five years.

16. During the latter half of 2017, Ms. Dubnov, who was pregnant at the time, was helping Ms. Gillespie to search for and hire a permanent Associate Athletic Director for Business Operations. When their search came up empty, Ms. Dubnov approached Ms. Gillespie in early 2018 and applied for the position.

17. By early 2018, Ms. Dubnov was already performing all essential functions of the Associate Athletic Director for Business Operations role, as she had been since February 2017.

18. The job posting for the position of Associate Athletic Director indicated a salary of $75,000, considerably more than the $54,428.80 the University was paying Ms. Dubnov for performing the identical duties on an interim basis.

19. Ms. Dubnov was on maternity leave from February to July 2018. During her leave, she received a generic declination letter for the Associate Athletic Director position.

20. While Ms. Dubnov was out on leave, and after another, less qualified male candidate turned down the Associate Athletic Director job, the University re-posted the same position under a different title: Senior Associate Athletic Director of Business and Internal Operations. This position, with the nearly identical job description, now had a starting salary of

$90,000. Neither Ms. Gillespie nor anyone else from the University told Ms. Dubnov about the new posting or encouraged her to apply.

### B. The University Hires a Comparable Male Employee at a Pay Rate More Than Twice What Ms. Dubnov Earned for Equal Work.

21. In mid-August 2018, Ms. Dubnov returned to work following her maternity leave and a short medical leave.

22. Soon thereafter, Ms. Gillespie hired Tom Payne as the new Senior Associate Athletic Director of Business and Internal Operations.

23. Mr. Payne was and is male.

24. The University paid Mr. Payne a starting salary of $90,000 to perform comparable, if not identical, duties to the ones Ms. Dubnov performed when she filled the role on an interim basis.

25. Ms. Dubnov and Mr. Payne performed equal work on the job, which requires equal skill, effort and responsibility, and their work was performed under similar working conditions.

26. Ms. Dubnov and Mr. Payne had similar educational and practical experiences.

27. After Mr. Payne was hired, Ms. Dubnov's interim duties ceased, and the University decreased her salary by $10,000. At this point, Ms. Dubnov's salary was $44,428.80.

28. Approximately two weeks later, Ms. Gillespie reduced Ms. Dubnov from a 12-month employee to a 9-month employee, reducing her salary by a quarter. Ms. Gillespie claimed the reduced schedule was due to budget reductions, even though the Athletics Department operational budget increased around the same time by approximately $600,000.

29. Now, the University was paying Ms. Dubnov $33,321.60.

30. Unfortunately, Mr. Payne struggled in his new position, leaving Ms. Dubnov to perform significant parts of his job, without compensation, while also performing her own.

31. By way of example, Mr. Payne did not complete the 2018 NCAA report, a critical function of the Associate Athletic Director for Business Operations. Instead, he called Ms. Dubnov two weeks before it was due and said, "I don't know how you did this job alone." Ms. Dubnov called an emergency meeting to delegate the work and ensure timely completion.

32. Ms. Dubnov completed the report, but not before leaders on campus noticed Mr. Payne's incompetence and that Ms. Dubnov was performing work for which she was not being compensated.

33. With encouragement from campus leaders, in January 2019, Ms. Dubnov filed a complaint with Gwaina Wauldon, the University's then–Executive Director of Equal Opportunity Programs, detailing the University's discriminatory hiring and pay practices for the position of Senior Associate Athletic Director and Ms. Gillespie's demotion of Ms. Dubnov following her maternity and medical leave.

34. The investigation into Ms. Dubnov's complaints began in late February 2019. Mr. Payne resigned immediately thereafter. From that point forward, Ms. Dubnov again assumed nearly all the responsibilities of Senior Associate Athletic Director of Business and Internal Operations. The University was paying Ms. Dubnov $33,321.60 to perform the same functions it paid Mr. Payne $90,000 to perform.

      **C. In May 2019, the University Again Overlooks Ms. Dubnov for the Senior Associate Athletic Director Position and Elevates a Comparable Male Employee to Perform the Role at a Pay Rate Significantly Higher than the University Paid Ms. Dubnov to Perform Equal Work.**

35.      The University again posted an opening for the Associate Athletic Direct position. On May 31, 2019, Ms. Dubnov again applied for the position.

36.      In August, the University offered Ms. Dubnov an on-campus interview, selecting her as a top candidate for the position. Weeks later, though, Ms. Gillespie froze the position, and Ms. Dubnov's interview was never scheduled. Then, Ms. Gillespie unilaterally promoted Craig Sandlin, Senior Athletic Director for Externals Relations, to fill the position.

37.      Mr. Sandlin was and is male.

38.      Ms. Dubnov and Mr. Sandlin held comparable positions within the University.

39.      Ms. Dubnov and Mr. Sandlin performed equal work on the job, which required equal skill, effort and responsibility, and their work was performed under similar working conditions.

40.      Ms. Dubnov holds a master's degree in Sport Business Management and has more than five years more experience in finance, operations, and human resources than Mr. Sandlin.

41.      At the time of his promotion, Mr. Sandlin did not hold a master's degree, nor did he have financial or operational experience. His experience was specific to marketing.

42.      Despite Mr. Sandlin's alleged absorption of the duties, Ms. Dubnov continued to perform most, if not all, of the functions of the Senior Associate Athletic Director for Business.

43.      Ms. Dubnov continued to ask, through her counsel, that her pay be increased to the same amount the University paid comparable male employees to perform equal work.

44. On September 26, Athletic Director Gillespie separated from the University of Hartford. General Counsel Maria Feeley was named Interim Athletic Director.

45. The following day, Ms. Dubnov was promoted to Senior Associate Athletic Director for Business Operations, and her salary was increased to $90,000 per year. Since then, the University has named Ms. Dubnov Senior Women's Administrator.

46. However, the University has failed or refused to provide Ms. Dubnov with non-discriminatory pay for the equal work she performed from approximately February 2017 to September 26, 2019.

V.  **LEGAL CLAIMS**

**FIRST CLAIM FOR RELIEF:**
**UNEQUAL PAY IN VIOLATION OF THE FEDERAL EQUAL PAY ACT,**
**29 U.S.C. § 206(d)**

47. The Plaintiff incorporates by reference all preceding allegations in this Complaint as if fully pled in this Count.

48. The University paid Ms. Dubnov wages and benefits that were less than those paid to one or more employees of the opposite sex who were comparably situated.

49. The University's conduct in this regard was willful and/or in reckless disregard to Ms. Dubnov's right to equal pay.

50. As a result of the University's conduct, Ms. Dubnov has suffered both economic and emotional harm.

## SECOND CLAIM FOR RELIEF:
## UNEQUAL PAY IN VIOLATION OF THE CONNECTICUT EQUAL PAY ACT, CONN. GEN. STAT. §§ 31-75(a), 31-76(b)

51. The Plaintiff incorporates by reference all preceding allegations in this Complaint as if fully pled in this Count.

52. The University paid Ms. Dubnov wages and benefits that were less than those paid to one or more employees of the opposite sex who were comparably situated.

53. The University's conduct in this regard was intentional and/or recklessly indifferent to Ms. Dubnov's right to equal pay.

54. As a result of the University's conduct, Ms. Dubnov suffered damages.

\* \* \*

**WHEREFORE**, Ms. Dubnov seeks the following remedies:

1. Back pay damages for three years preceding the filing of this Complaint, pursuant to the federal Equal Pay Act and the Connecticut Equal Pay Act;

2. Liquidated damages, pursuant to the federal Equal Pay Act;

3. Compensatory damages for the pain and suffering caused by the defendant's violation of the Connecticut Equal Pay Act;

4. Punitive damages for the defendant's willful and/or recklessly indifferent violation of the Connecticut Equal Pay Act;

5. An award of reasonable attorney's fees and costs; and

6. Such other relief as may be just and equitable.

          **RESPECTFULLY SUBMITTED,**
          **THE PLAINTIFF,**
          **AMBER DUBNOV**

By:   */s/ Amanda M. DeMatteis*
        Amanda M. DeMatteis *(ct29413)*
        Joshua R. Goodbaum *(ct28834)*
        GARRISON, LEVIN-EPSTEIN
            FITZGERALD & PIRROTTI, P.C.
        405 Orange Street
        New Haven, CT  06511
        Tel.: (203) 777-4425
        Fax: (203) 776-3965
        adematteis@garrisonlaw.com
        jgoodbaum@garrisonlaw.com